UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID SUTTON, JR.,

    Plaintiff,

v.                                         Case No. 07-14897

FREEDOM SQUARE LIMITED,         HONORABLE AVERN COHN
FCA SENIOR CITIZENS HOUSING CORP.,
ROBERT S. PIPER, PIPER REALTY, SUSAN
GAINES, and MARY O'BRIEN,

    Defendants.

_____/

**MEMORANDUM AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I. Introduction

This is a case under the Fair Housing Act, 42 U.S.C. § 3601 et seq. Plaintiff David Sutton ("Sutton"), proceeding pro se and in forma pauperis, is suing defendants Freedom Square Limited Partnership (Freedom Square), FCA Senior Citizens Housing Corporation (FCA), Robert S. Piper, Piper Realty, Susan Gaines and Mary O'Brien[1] claiming that he was discriminated against when his application for tenancy at an apartment was rejected. Sutton claims violations of the Fair Housing Amendment Act, 42 U.S.C. § 3604 (FHAA), and a violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq.

---

[1] Sutton also sued Paul Hendrickson. However, Hendrickson filed a motion to dismiss which was granted. See Order filed March 7, 2008.

Before the Court is defendants' motion to dismiss or for summary judgment and Sutton's cross motion for summary judgment. The record is sufficiently complete for decision on the motions. For the reasons that follow, defendants' motion for summary judgment will be granted, Sutton's motion for summary judgment will be denied, and the case will be dismissed.

## II. Background

### A. The Parties

Sutton is an African American man. He says he is disabled due to a "mobile impairment" which impairs his ability to walk, see, and work. He was 56 years old at the time he applied for tenancy at Freedom Square.

Freedom Square is a tax subsidized apartment complex located in Farmington Hills, Michigan. The complex includes 23 units which are subject to tax credits under an agreement with the Michigan State Housing Development Authority which requires the units be leased to individuals 62 years or older or who are 55 years or older with a disability. Specifically, Freedom Square is a "Section 42 low income housing tax credit apartment complex."

Freedom Square is owned by Freedom Square Limited Dividend Housing Association Limited Partnership, a Michigan limited partnership (Freedom Square Limited Partnership). FCA is the general partner in the Freedom Square Limited Dividend Housing Association Partnership.

Piper Realty is also an investor/partner in the Freedom Square Limited Partnership. Piper Realty contracted with Freedom Square to manage the Freedom Square apartments. Robert Piper is the President of Piper Reality. Susan Gaines is an

employee of Piper Realty and property manager of Freedom Square. Mary O'Brien is also an employee of Piper Realty and is the on-site, resident manager at Freedom Square.

B. Relevant Events

In February 2006, Sutton submitted his first application for tenancy at Freedom Square. There were no vacancies at the time so his application was placed on file.

On August 6, 2007, Sutton made a second application for tenancy. At the time of submission, Sutton told O'Brien that he needed an apartment quickly and that he anticipated receiving a state-subsidized "Section 8 rent subsidy" covering most of his monthly rent. The Section 8 voucher program is a voluntary program through which the federal government provides rent subsidies to eligible low-income families who rent from participating landlords. Section 8 subsidies are paid directly to the landlord, bypassing the tenant. See 42 U.S.C. § 1437f(a).

Because there was a vacancy, O'Brien began the screening process in accordance with Freedom Square's Tenant Selection Criteria. This included a credit check and initial criminal background check. Sutton's credit score was 67, well-below the required minimum score of 160. Most notably, Sutton owed $5,000.00 to a prior landlord. The credit report also showed some civil judgments against Sutton, some repossessions, delinquency balances on open accounts, and delinquent utility bills.

On August 7, 2007, O'Brien sent Sutton an "Adverse Action Letter" rejecting his application due to his credit score and advising him that he had a right to contest that determination.

On August 8, 2007, Sutton wrote Freedom Square requesting to be relieved of

the credit requirements as an "accommodation" of his disability. When Gaines learned that Sutton was challenging the rejection of his application, she directed that a criminal background check be performed. The check was performed on August 8, 2007 and revealed the following:

- A 2003 conviction for attempted insurance fraud, in violation of M.C.L. § 500.45111

- A 2003 conviction for attempted report of a felony (stolen vehicle), in violation of M.C.L. § 750.411(A)(1)(b).

On August 21, 2007, Sutton requested a hearing on his application.

A hearing was held on September 20, 2007. At the hearing, Sutton showed that his convictions were misdemeanors which would not automatically exclude him from Freedom Square's requirements. However, another credit check showed Sutton's credit score had declined to a 59.

The record then shows a series of correspondence between Piper Realty and Sutton in which Sutton continued to ask to be relieved of the credit requirements in order to accommodate his disability. In particular, Sutton offered to have a co-signer and/or pay three months rent in escrow. Piper Realty declined Sutton's offer and continued to reject Sutton's application because of his poor credit and rental history. Sutton's criminal record was not a basis for the rejection.

Eventually, Sutton sued defendants.

Sutton does not dispute his credit or criminal history but alleges that his rejection was due to defendants' efforts to reduce or exclude African-Americans and disabled persons from the apartment complex.

4

After Sutton filed suit, an additional criminal history check by counsel for defendants showed that in 2002 Sutton was charged in this district with false declaration of bankruptcy, in violation of 18 U.S.C. § 152(3). Sutton pled guilty and was sentenced to 24 months probation and 2 years home confinement. United States v. Sutton, Case No. 00-81054. In 2004, he was sentenced to 6 months in prison for violating his probation by committing other crimes (noted above).

### III. Legal Standards

In facing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974 (rejecting the traditional Rule 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S.Ct. at 1964-65 (citations omitted); Association of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the

5

assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp., 127 S.Ct. at 1965 (citations omitted).

With respect to summary judgment, summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th

Cir. 2001).

## IV. Analysis

### A. FHAA Claims

The FHAA, also known as Title VIII, bars discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling ... because of race . . . and handicap." 42 U.S.C. § 3604(b).

Unlawful discriminatory housing practices in violation of the FHAA may be brought under three distinct legal theories: "(1) intentional discrimination claims (also called disparate treatment claims); (2) disparate impact claims: and (3) claims that the [defendants] failed to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped] person[s][an] equal opportunity to use and enjoy a dwelling." Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Township of Scotch Plains, 284 F.3d 442, 448 n. 3 (3d Cir. 2002) (citations omitted).

Sutton is claiming discrimination on two of the three legal theories. He claims discrimination on the grounds defendants failed to accommodate his disability. He also claims intentional discrimination based on his disability. Each theory is separately addressed.

### 1. Failure to Accommodate

The FHAA requires accommodation if such accommodation is 1) reasonable, and 2) necessary 3) to give disabled people equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B); Oconomowoc Residential Programs, 300 F.3d 775, 783 (7th Cir. 2002)(citations omitted). The requirements for reasonable accommodation

under the ADA are the same as those under the FHAA.  42 U.S.C. § 12131(2); Oconomowoc Residential Programs, 300 F.3d at 783 (citations omitted).

Sutton has the burden to show that the accommodation sought is reasonable.  An accommodation is reasonable unless it requires "a fundamental alteration in the nature of a program" or imposes "undue financial and administrative burdens."  Southeastern Community College v. Davis, 442 U.S. 397, 412 (1979), 442 U.S. at 410, 412, 99 S.Ct. at 2369, 2370.  As the Court of Appeals for the Seventh Circuit has noted, "cost (to the defendant) and benefit (to the plaintiff) merit consideration as well."  Bronk v. Ineichen, 54 F.3d 425, 429 (7th Cir. 1995).  "An accommodation is unreasonable if it [...] requires a fundamental alteration in the nature of the program."  Id. at 784.

Here, Sutton requests an accommodation in the form of defendants relaxing its credit requirements.  Sutton says that he is unable to work, and therefore has poor credit, because of his disability.  This is not a reasonable accommodation.  Requiring defendants to overlook Sutton's credit history, which includes a debt to a former landlord, and offer him tenancy would certainly raise the risk of imposing a financial burden on defendants.  Moreover, requiring defendants to waive credit requirements for disabled applicants would alter the essential nature of its operations, particularly because Freedom Square is a low income tax credit housing development required by law to accept high proportions of tenants who are disabled and of lower income.  Sutton's requested accommodation would impact many other tenants and applicant's with a poor credit history could become the norm and not the exception at Freedom Square.  This could, as defendants point out, result in more late payments, more utility shutoffs, more evictions, and a far less stable living community in general.  As

defendants point out, applicable regulations permit a landlord to make inquiry into a prospective tenants ability to meet the requirements of tenancy which includes screening for credit history. See 24 C.F.R. 982.307(a)(2).

Moreover, Sutton's requested accommodation goes more towards his economic condition than his disability. Other courts have similarly refused to require accommodations aimed at alleviating financial hardships rather than overcoming obstacles particular to disability. See Hemisphere Bldg. Co. v. Village of Richton Park, 171 F.3d 437, 439-40 (7th Cir. 1999) (refusing to require village to waive neutral zoning ordinance to accommodate "the interest of handicapped people in being able to obtain housing suitable for their special needs at the lowest possible price"); Brandt v. Village of Chebanse, 82 F.3d 172, 174 (7th Cir. 1996) (FHA does not "require[ ] municipalities to eliminate rules that increase the expense of housing for all persons equally"); Means v. Dayton, 111 F. Supp. 2d 969, 978 (S.D. Ohio 2000) (granting summary judgment where plaintiff argued only that zoning requirement caused group home to incur expenses, and presented no evidence that waiver of such requirement was necessary for residents' use and enjoyment of home); Schanz v. Village Apartments, 998 F. Supp. 784, 792 (E.D. Mich. 1998) (holding that FHA does not require landlord to accept financial guarantor agreement on behalf of disabled plaintiff unable to meet landlord's credit and income requirements; "[plaintiff's] handicap is not preventing him from renting an apartment") (emphasis added); cf. United States v. California Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1381 (9th Cir.1997) (holding that no reasonable jury could find for plaintiff where plaintiff did not show that waiver of parking fees for home healthcare provider was necessary to afford plaintiff an equal opportunity to use and

enjoy her dwelling). These "economic accommodation" cases stand for the general proposition that an accommodation is not "necessary" to afford a disabled person access to equal housing opportunity when the accommodation sought does not directly ameliorate an effect of the disability. In other words, the FHAA does not necessarily require defendants to waive generally applicable policies when such policies negatively affect disabled individuals for reasons unrelated to their disability. Although economic hardship may result from a disability and an accommodation with a economic element is not necessarily unreasonable, see U.S. Airways v. Barnett, 535 U.S. 391 (2002), inquiry must be on a case by case basis. Here, the requested accommodation is not reasonable under the circumstances.

Sutton, however, says that similar accommodations have been upheld as reasonable, citing Geibler v. M & B Associates, 343 F.3d 1143 (9th Cir. 2003). In Giebler, the plaintiff was unable to work due to a disability for which he received monthly benefits. Defendant refused to rent to plaintiff on the grounds that he did not meet the minimum income requirements. Defendant also did not permit co-signers. Plaintiff proposed an accommodation in the form of allowing his mother to rent the apartment on his behalf. Defendant refused. Plaintiff sued claiming a violation of the FHAA. The Court of Appeals for the Ninth Circuit held that plaintiff met his burden of demonstrating that the particular accommodation he requests-allowing an eligible relative to rent an apartment for him-is "reasonable on its face."

Giebler is distinguishable. First, the court specifically noted that plaintiff had a good credit history and record of payment at his prior tenancy. The court also noted that plaintiff's mother meet the minimum income requirement and herself had a good

credit history. That is not the case here. The case does not stand for the blanket proposition that a waiver of credit requirements is a reasonable accommodation for individuals whose disability may prevent them from working. It also does not stand for the proposition that a wavier of credit requirements is a reasonable accommodation. Rather, under the facts presented in Giebler, which included good credit history for plaintiff and his mother, the court concluded the requested accommodation was reasonable. Here, there is no evidence regarding the credit history of Sutton's alleged co-signer.

In short, Sutton has not made out a case for discrimination under the FHAA based on a failure to accommodate. Summary judgment in favor of defendants is appropriate.

2. Disparate Treatment[2]

The Sixth Circuit analyzes disparate treatment claims by utilizing the burden shifting test first described in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Mencer v. Princeton Square Apts., 228 F.3d 631, 634 (6th Cir.2000). The Sixth Circuit explained in Mencer:

> [c]ourts have adapted this test to fair housing claims by requiring the plaintiff to first establish a prima facie case of discrimination. Then, in response, the defendant must offer a legitimate nondiscriminatory reason for the housing decision made. Finally, the plaintiff must show that the proffered reason is a pretext that masks discrimination.

---

[2]Defendants also addressed a claim under a disparate impact theory, arguing that Sutton failed to show Freedom Square's requirements for tenancy had a disparate impact on minorities or disabled. In his response, however, Sutton says that he is not claiming discrimination based on disparate impact, only disparate treatment.

11

Id. (citing Selden v. United States Dep't of Hous. and Urban Develop., 785 F.2d 152, 160 (6th Cir. 1986)). The Sixth Circuit has outlined a prima facie case of housing discrimination:

> A prima facie housing discrimination case is shown when the plaintiff proves: (1) that he or she is a member of a [protected class], (2) that he or she applied for and was qualified to rent or purchase certain property or housing, (3) that he or she was rejected, and (4) that the housing or rental property remained available thereafter.

Mencer, 228 F.3d at 634-35.

Sutton claims that defendants' tenancy requirements discriminate against African Americans and disabled persons. Defendants say that Sutton cannot make out a prima facie case because he was undisputedly not qualified for tenancy due to his credit history. The Court agrees. As stated above, Sutton clearly did not meet the tenant selection criteria and Freedom Square had no legal duty to waive or otherwise alter the credit requirements in order to approve Sutton's application.

Moreover, even assuming Sutton had made out a prima facie case, defendants had a legitimate nondiscriminatory reason for rejecting Sutton's application - a desire to provide its tenants with a stable and economically viable residential development and assurances that tenants will be able to meet their financial obligations in addition to their rent which would have a direct impact upon their housing. Sutton's poor credit history and rental history undisputedly did not meet Freedom Square's tenancy requirements. Moreover, although Sutton's criminal history was not a ground for rejection of his application, it is clear that his felony conviction also provides a basis for exclusion.

There is also no evidence that Sutton's rejection was a pretext for discrimination based on his race or disability. Defendants records show that it leases to African

Americans in significant numbers (in August 2007, 27 of Freedom Squares 112 units were leased to African Americans). Defendants' Summary of Credit Data From Applicants for Tenancy at Freedom Square from January 2007 to February 2008 shows all of the African Americans had significantly higher credit scores than Sutton and Sutton's scores of 67 and 59 were the lowest, substantially, of all the applicants. Moreover, as a Section 42 low income housing tax credit development, Freedom Square is required to lease, and does lease, to disabled individuals.

Overall, defendants are entitled to summary judgment on Sutton's claim of discrimination based on disparate treatment.

### B. ADA Claim

Defendants say that Sutton's claims under the ADA fails because Freedom Square is a residential facility, not a place of public accommodation, to which the ADA does not apply. The Court agrees. Title III of the ADA provides in pertinent part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The ADA only regulates non-residential facilities. H.R. Resp. No. 101-485(II), 101st Cong., 2d Sess. 383 (1990), reprinted in USCC & AN 1990 at 267; see also 28 C.F.R. Pt. 36, App. B, § 36.104 FN2 (definitions). Title III and the regulations promulgated to implement it define "place of public accommodation" as a "facility, operated by a private entity, whose operations affect commerce and fall within at least one" of twelve specified categories, which include:

> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire

13

and that is actually occupied by the proprietor of such establishment as the residence of such proprietor.

42 U.S.C. § 12181(7); see also 28 C.F.R. § 36.104. Federal courts have consistently determined that residential condominiums and apartments are not "public accommodations." See Phibbs v. American Property Management, --- F.Supp.2d ----, 2008 WL 746977, *3 (D. Utah Mar.19, 2008) (residential apartment complex and its assigned parking were not places of public accommodation as contemplated by the ADA); Mabson v. Assoc. of Apartment Owners of Maui, No. 06-235-DEA-LEK, 2007 WL 2363349 (D. Hawai'i Aug.13, 2007) (residential condominiums, whether short-term or long-term rental units, were not "public accommodations" within ADA); Lancaster v. Phillips Investments, LLC, 482 F. Supp. 2d 1362 (2007) (apartment building was not a public accommodation subject to Title III of ADA in suit by wheelchair-bound plaintiff for injury on ramp); Indep. Housing Servs. of San Francisco v. Fillmore Ctr. Assocs., 840 F. Supp. 1328, 1344 (N.D. Cal. 1993) (apartments and condominiums do not constitute public accommodations within the meaning of the ADA); Reid v. Zackenbaum, No. 05-CV-1569, 2005 WL 1993394, *4 (E.D.N.Y. Aug. 17, 2005) (same); Regents of the Mercerburg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 165 n. 8 (3rd Cir.2006) (agreeing that residential apartments and condominiums do not constitute public accommodations within the meaning of the ADA, but distinguishing the dormitory housing at issue); Thompson v. Sand Cliffs Owners Ass'n, Inc., No. 3:96cv270-RV, 1998 WL 35177067, *3 (N.D. Fla. Mar.30, 1998) (condominiums which did not allow units to be rented out were not public accommodation within the meaning of the ADA). Other federal courts uniformly have held that residential apartment buildings and

condominiums are not lodging within the "public accommodation of the ADA."
<u>Independent Housing Services of San Francisco v. Fillmore Center Associates</u>, 840 F. Supp. 1328 (N.D. Cal. 1993) (apartments and condominiums do not constitute public accommodations within the meaning of the ADA).

Sutton attempts to distinguish these cases by asserting that Freedom Square is a "public entity" within the meaning of Title II of the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity is defined as:

    (A) any State or local government;

    (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

    (C) the National Railroad Passenger Corporation, and any commuter authority

42 U.S.C. § 12131. Clearly, Freedom Square is not a public entity subject to liability under Title II. Sutton has therefore failed to make out a claim for violation of the ADA.

V. Conclusion

For the reasons stated above, defendants' motion for summary judgment is GRANTED.  Sutton's motion for summary judgment is DENIED.  This case is DISMISSED.

SO ORDERED.

    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  October 15, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record and David Sutton, Jr, 24885 Woodbridge Drive, #29206 Farmington Hills, MI 48335 on this date, October 15, 2008, by electronic and/or ordinary mail.

    s/Julie Owens
Case Manager, (313) 234-5160